United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

DOUGLAS TENNENBAUM,

Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

Case No. 23-cv-00592-LB

**ORDER DISMISSING CASE**

Re: ECF No. 15

**INTRODUCTION**

In February 2019, San Francisco Public Defender Jeff Adachi died. Someone in the San Francisco Police Department (SFPD) leaked a police report about the death to the press. The SFPD investigated the leak, determined that a reporter named Bryan Carmody sold copies of the report to other news outlets, obtained search warrants, and searched Mr. Carmody's home, office, and devices. Based on evidence seized during the searches, the SFPD obtained a search warrant for the contents of Plaintiff Douglas Tennenbaum's personal mobile phone in March and April 2019. Mr. Tennenbaum is an SFPD police officer and the defendants investigated him as the source of the leak. In August 2019, the state court quashed the warrants and ordered destruction of the seized evidence. In 2020, the defendants compelled the plaintiff to sit for interviews.

The plaintiff filed this lawsuit on February 9, 2023, alleging an illegal search in violation of the Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, California's Bane Act, Cal

Civ. Code § 52.1, and the duty under state negligence law to refrain from unlawful searches. The defendants moved to dismiss the claims on the ground that they are untimely under the two-year statute of limitations. The plaintiff counters that the statute was tolled until the SFPD closed its internal-affairs investigation of him in August 2022. The court dismisses the case: the claims are untimely.

**STATEMENT**

The relevant timeline is as follows.

Mr. Adachi died on February 22, 2019.[1] In March 2019, the SFPD learned that Mr. Carmody, a reporter, sold an SFPD police report about the death to news outlets.[2] On an unspecified date, the SFPD obtained search warrants for, and searched, Mr. Carmody's home, office, and devices. "These searches were illegal." Defendant Joseph Obidi, an SFPD sergeant, was the affiant.[3] On March 13 and April 16, 2019, the SFPD obtained search warrants for other devices, including the plaintiff's personal cell phone, using the illegally obtained evidence to support the search-warrant affidavits. Pursuant to a court order that allowed delayed notice, the SFPD notified the plaintiff of the search on May 29, 2019.[4] "By August 2, 2019," the state court held that all warrants were "illegally obtained," quashed the warrants, and ordered the destruction of the seized evidence.[5]

In May 2019, the SFPD concluded its criminal investigation. The San Francisco Department of Police Accountability (DPA) then investigated the leak.[6] Defendant Paul Henderson is the DPA's Executive Director and initiated the investigation.[7] Defendants Newton Oldfather, a staff attorney, and Kevin Comer, an investigator, worked on the investigation.[8] At two compelled interviews (on

---

[1] Compl. – ECF No. 1 at 3 (¶ 5). Citations refer to the Electronic Case File (ECF). Pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 4 (¶ 13). The complaint says "May," but the timeline shows that it is March.

[3] *Id.* (¶ 14).

[4] *Id.* at 5 (¶ 15), 14 (¶ 58).

[5] *Id.* at 5 (¶ 17).

[6] *Id.* (¶ 18).

[7] *Id.* at 3 (¶ 9)

[8] *Id.* (¶¶ 10–11).

February 25, 2020 and August 19, 2020), the plaintiff refused to answer questions on the advice of counsel.[9] On August 21, 2020, Defendant William Scott, Chief of the SFPD, ordered the plaintiff to surrender his star and gun because he refused to answer questions, and he reassigned the plaintiff to the mounted unit.[10] At a third compelled interview on September 21, 2020, before the SFPD Department of Internal Affairs, the plaintiff again refused to answer questions on the advice of counsel.[11] The plaintiff submitted the Police Commission's October 13, 2020 withdrawal of the disciplinary charges: it recites that (1) the Police Commission received the disciplinary charges filed against the plaintiff on September 23, 2020, (2) DPA asked to withdraw the charges on September 28, 2020, and (3) the Police Commission approved the withdrawal.[12]

In April 2022, the three-year criminal statute of limitations expired for prosecuting the leak of the SFPD report. That month, the plaintiff asked for, and the SFPD granted, a return to full duty.[13] On August 18, 2022, the SFPD sent the plaintiff a letter telling him that the case against him was closed and "no further action would be taken" because "there was insufficient evidence to proceed."[14]

The plaintiff filed this lawsuit on February 9, 2023.[15] He names six defendants — the City and County of San Francisco, Chief Scott, Mr. Henderson, Sergeant Obidi, Mr. Oldfather, and Mr. Comer — and asserts three claims, all predicated on the alleged illegal search: (1) a violation of the Fourth Amendment and 42 U.S.C. § 1983, (2) a violation of the Bane Act, and (3) negligence.[16]

The parties do not dispute the court's federal-question jurisdiction over the federal claim and supplemental jurisdiction over the state claims. 28 U.S.C. §§ 1331, 1367(a). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[17].

---

[9] *Id.* at 5 (¶ 19), 6 (¶ 23).

[10] *Id.* at 6–7 (¶ 24).

[11] *Id.* at 7 (¶ 25).

[12] Police Comm'n Resolution, Ex. D to Tennenbaum Decl. – ECF No. 19-5 at 2.

[13] Compl. – ECF No. 1 at 7 (¶ 26).

[14] *Id.* (¶ 27) (cleaned up).

[15] *See id.* (date stamp on each page).

[16] *Id.* at 9–13 (¶¶ 34–57).

[17] Consents – ECF. Nos. 12, 16.

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to

United States District Court
Northern District of California

amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

**ANALYSIS**

The issue is whether the two-year statute of limitations bars the claims. The plaintiff contends that it does not because his claims did not accrue until at least August 18, 2022, when he learned that the SFPD investigation of him had been dropped. He adds that the harm against him was at least ongoing through this date and potentially is ongoing still because the DPA could resurrect the case against him.[18] The claims accrued at least by September 2020, and the two-year statute of limitations bars the complaint, which was filed on February 9, 2023.

"In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, [courts] look to the statute of limitations for personal injury actions in the forum state." *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). The Ninth Circuit has held that California's two-year "statute of limitations for personal injury actions applies to § 1983 suits in federal court." *Id.* (citing Cal. Civ. Proc. Code § 335.1). It also applies to Bane Act claims. *Chavez v. City of Hayward*, No. 14-cv-00470-DMR, 2015 WL 3562166, at *4 (N.D. Cal. June 8, 2015); *Thomas v. Sonoma Cnty.*, No. C 12-5607-SI, 2013 WL 3818758, at *3 (N.D. Cal. July 21, 2013). A claim may be dismissed pursuant to a statute of limitations only when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

Federal law determines when a cause of action accrues, and the statute of limitations begins to run, in a § 1983 action. *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (though federal courts often refer to common-law tort principles when deciding questions of accrual, such principles are meant to guide rather than control the definition of § 1983 claims); *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (per curiam); *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015).

---

[18] Opp'n – ECF No. 19 at 6–7.

Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999). As a general matter, the statute of limitations begins to run when the plaintiff has a "complete and present cause of action." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (cleaned up).

To determine when a plaintiff has a complete and present cause of action, federal courts focus first on the specific constitutional right alleged to have been infringed. *McDonough*, 139 S. Ct. at 2155. Thus, accrual ultimately depends on the substantive basis of the claim. *See, e.g.*, *id.* at 2154–55 (fabricated-evidence claim). A cause of action for an illegal-search claim "accrues when the wrongful act occurs . . . even if the person does not know at the time that the search was warrantless." *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952 (9th Cir. 2022) (cleaned up); *Belanus*, 796 F.3d at 1026 (same). California law is similar: a cause of action accrues "when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises," *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (cleaned up), "even though the plaintiff is ignorant of the cause of action or the identity of the wrongdoer," *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974).

Here, the searches were conducted in March 2019, the plaintiff learned about them in May 2019, and the evidence was quashed in August 2019. The statute of limitations for any illegal search began to run at least by May 2019. *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278–79 (9th Cir. 2017) (claims based upon judicial deception in affidavit used to obtain warrant accrue when affidavit is reasonably available).

The plaintiff nonetheless contends that his claims did not accrue until at least August 2022, when the DPA told him that it closed its investigation.[19] In a similar case involving a Fourth Amendment violation, the Ninth Circuit rejected a similar argument as a subtle (but ineffective) attempt to analogize the case to a malicious-prosecution action. *Bonelli*, 28 F.4th at 954.

---

[19] *Id.*

A claim for malicious prosecution does not accrue until criminal proceedings against a plaintiff terminated in his favor. *See, e.g.*, *McDonough*, 139 S. Ct. at 2154–55 (statute of limitations on fabricated-evidence claim does not begin to run until the criminal proceedings against the § 1983 plaintiff have terminated in his favor); *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) (a claim for deliberate fabrication of evidence accrues when the charges are fully and finally resolved and can no longer be brought against the defendant; here, the acquittal at the retrial).

Somewhat similarly, tolling rules can extend the time to bring a lawsuit when proving the claim would imply the invalidity of the conviction. In *Heck v. Humphrey*, the Court held that "when a state prisoner seeks damages in a § 1983 lawsuit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. 477, 487 (1994). A corollary is that "a 1983 cause of action attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–99; *Rosales-Martinez v. Palmer*, 753 F.3d 890, 896 (9th Cir. 2014) (under *Heck v. Humphrey*, claims that would invalidate conviction if proven accrue when conviction is overturned; claim for suppression of evidence accrued when resulting conviction overturned on federal habeas review). But under *Bonelli*, there is no delayed accrual based on the disciplinary process: the wrong occurred when the plaintiff learned of the search in May 2019. 28 F.4th at 952.

In *Bonelli*, the plaintiff sued his former university under § 1983 for a Fourth Amendment violation predicated on two encounters with campus security guards: one in February 2017 involving the confiscation of his student ID and the other in July 2017 involving interference with his use of the campus library. *Id.* at 950–51. The university initiated disciplinary proceedings, gave a disciplinary warning, and ultimately rescinded the warning on August 29, 2018. *Id.* at 951. The plaintiff filed his lawsuit on January 20, 2020 and the district court dismissed it as untimely. The plaintiff appealed, invoking *Heck* and contending that the claims did not accrue until August 29, 2018, when the university rescinded the warning. *Id.* at 953. The court affirmed the district

United States District Court
Northern District of California

court, held that *Heck* did not apply because there was no conviction, and rejected the argument that a *Heck*-like rule of delayed accrual permitted the lawsuit. *Id.* at 953–54.

Here, as in *Bonelli*, the plaintiff's claims accrued when he learned of the wrongful acts in May 2019. The plaintiff does not dispute that he knew that the defendants caused him harm in 2019 but contends that he feared further reprimand for the alleged leak.[20] That does not alter the outcome: under *Bonelli*, the plaintiff's claims cannot be analogized to the tort of malicious prosecution, and they do not turn on the resolution of disciplinary proceedings. *Id.* at 954. And even "[s]etting aside that this lawsuit is not about criminal prosecutions," "the core principles reinforcing the malicious prosecution analogy — federalism, comity, consistency, and judicial economy — [do not] support extending this analogy" to a police investigation. *Id.* at 954–55 (cleaned up) (making this point in the context of the collegiate code-of-conduct inquiry alleged in that complaint).

In sum, the plaintiff's unlawful-search claims, whether predicated on federal or state law, are barred by the two-year statute of limitations because the claims accrued at least by May 2019, when the plaintiff learned of the searches of his devices.

In his opposition, the plaintiff recasts his argument to suggest a due-process challenge to the DPA's investigation of him predicated on the allegedly illegal search of Mr. Carmody's property that resulted in the search of his phone. This theory is implausible. The defendants cite *Lingo v. City of Salem* to support the conclusion that the exclusionary rule does not apply to § 1983 actions.[21] 832 F.3d 953, 960 (9th Cir. 2016). The exclusionary rule bars use of the fruits of an unlawful search in a criminal proceeding against a defendant with standing. But the doctrine does not require suppression of the person: an unlawful entry into a home would result in suppression of evidence seized there (and evidence seized in a rollover warrant predicated on the earlier illegal search). But even in the criminal context, an unlawful entry does not require suppression of the person, only his conviction based on unlawfully seized evidence. And in the Ninth Circuit, the exclusionary rule

[20] *Id.* at 7 (citing Tennenbaum Decl. – ECF No. 19-1 for this point); *see* Tennenbaum Decl. – ECF No. 19-1 (describing the plaintiff's acquaintance with Mr. Carmody socially and professionally at crime scenes and the events set forth in the Statement, including the disciplinary actions; does not discuss further reprimand explicitly).

[21] Reply – ECF No. 21 at 10.

does not apply to a § 1983 claim of wrongful arrest. *Id.* at 957–58, 960. Essentially, the plaintiff is mounting a wrongful-investigation claim (the functional equivalent of a wrongful-arrest claim) predicated on a wrongful search. That claim not only is untimely under *Bonelli*, but also fails on the merits: the exclusionary rule does not apply to the claims against the DPA or the SFPD for a wrongful investigation. *Id.* It also would be a tough claim under any set of circumstances, given the doctrine of qualified immunity (admittedly not raised by the defendants because it is unnecessary).

**CONCLUSION**

Because the claims are not timely, and the deficiency cannot be cured by amendment, the court dismisses the complaint with prejudice. This resolves ECF No. 15.

**IT IS SO ORDERED.**

Dated: October 6, 2023

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California